IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| Phillips and Jordan, Inc., | ) | Civil Action No. 5:18-cv-00559-JMC |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| Western Surety Company; McCarthy Improvement Company, | ) | |
| Defendants. | ) | |

This action arises from a contract dispute between Plaintiff Phillips and Jordan, Inc., and Defendants Western Surety Company[1] ("WSC") and McCarthy Improvement Company ("MIC") (collectively "Defendants"). The matters before the court are Plaintiff's and Defendants' Motions for Partial Summary Judgment (ECF Nos. 83, 84, 85). For the reasons set forth below, the court **DENIES** Plaintiff's and Defendants' motions.

## I. JURISDICTION

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) (2012). (ECF Nos. 11 at 1 ¶ 4; 18 at 15, 18 ¶¶ 1-2, 18.) Diversity jurisdiction requires complete diversity of parties and an amount in controversy in excess of $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. §1332(a). Complete diversity of parties in a case means that no party on one side may be a citizen of the same state as any party on the other side. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372 (1978). There is diversity jurisdiction in this case because the parties

---

[1] MIC obtained a payment bond from WSC as required by South Carolina law, with MIC as the principal and WSC as the surety. WSC agreed to be bound jointly and severally with MIC to all persons furnishing labor or materials to the project if MIC failed to make prompt payment to such persons. (ECF No. 1-2 at 1-4.)

have sufficiently pleaded that Plaintiff is organized under the laws of North Carolina and has a principal place of business in Tennessee; WSC is organized under the laws of, and has a principal place of business in, South Dakota; and that MIC is organized under the laws of, and has a principal place of business in, Iowa. (ECF Nos. 11 at 1 ¶¶ 1-3; 18 at 15 ¶ 2.)

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2013, MIC contracted with the South Carolina Department of Transportation ("SCDOT") on a design-build project known as the "Interstate 95/U.S. Route 301 Interchange & South Carolina Route 6 Connector" in Orangeburg, South Carolina. (ECF No. 1-1 at 1-79.) MIC entered a subcontract with Plaintiff on October 14, 2014 to work on part of the project. (ECF No. 1-3 at 1 ("By means of this Agreement, [Plaintiff] does agree to furnish, erect[,] and install all materials and perform all work and in every respect complete the [project] . . . .").) Plaintiff characterizes the subcontract as an agreement "to perform dirt work on the [p]roject." (ECF No. 83 at 5 (citing ECF No. 1-3 at 1-55).) Plaintiff claims that shortly after the execution of the subcontract, MIC issued a schedule to Plaintiff with a date of completion in June 2015. (ECF Nos. 83-2 at 19; 84-10 at 9.) MIC's plan for securing and providing the quantities of fill to build the roadway embankment "primarily relied upon an assumption that enough quantities of acceptable soils could be obtained by over-excavating the onsite detention ponds." (ECF No. 4, 5 ¶ 28; *see e.g.*, 83-1 at 3.) However, Plaintiff alleges that soon after it began performance in 2014, "the quality of the onsite soils to be excavated and used as fill became suspect." (*Id.* at 6 ¶ 34.) Plaintiff alleges that "substantial quantities of the onsite soils failed to meet the required specifications for use as fill material, which was contrary to MIC's design and plan for the [p]roject," and "MIC was slow to import suitable material for use by Plaintiff as fill, as required by the subcontract." (*Id.* at 6 ¶ 35.) According to the parties, the subcontract does not include any

obligation or requirement for Plaintiff to furnish or supply any fill material. (ECF Nos. 11 at 7 ¶ 40; 18 at 5 ¶ 40 (citing ECF No. 1-3 at 1-55).) Defendants generally deny Plaintiff's allegations and contend that "the parties did later discuss [Plaintiff] paying for imported fill as means to allow [Plaintiff] to increase its inadequate production rates for its work" by way of a "gentleman's agreement." (ECF No. 83-6 at 15-18.)

On June 1, 2018, Plaintiff filed an Amended Complaint asserting five claims: Count I: Breach of Contract against MIC (ECF No. 11 at 11 ¶¶ 77-83); Count II: Quantum Meruit / Unjust Enrichment against MIC[2] (ECF No. 11 at 12 ¶¶ 84-90); Count III: Violation of South Carolina's Prompt Pay Act, S.C. Code Ann. § 29-6-30 (2019), against MIC (ECF No. 11 at 13 ¶¶ 91-95); Count IV: Recovery of Attorney's Fees and Interest for Improvement of Real Estate against MIC and WSC pursuant to S.C. Code Ann. § 27-1-15 (2019) (ECF No. 11 at 14 ¶¶ 96-105); and Count V: Breach of Payment Bond against MIC and WSC. (ECF No. 11 at 15 ¶¶ 106-112). Defendants filed an Answer and Counterclaim against Plaintiff on June 15, 2018, asserting one count of breach of contract. (ECF No. 18 at 17 ¶¶ 15-18.) On October 15, 2019, Plaintiff filed a Motion for Partial Summary Judgment. (ECF No. 84.) Defendants filed separate Motions for Partial Summary Judgment the same day. (ECF Nos. 84, 85.) The parties filed Responses on October 29, 2019 (ECF Nos. 92, 94, 95), and Replies on November 5, 2019 (ECF Nos. 108, 109, 110).

### III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[2] Plaintiff has dismissed Count II: Quantum Meruit / Unjust Enrichment, stating: "[MIC] moves for summary judgment on [Plaintiff's] quantum meruit claim [because] [Plaintiff's] Complaint claimed, and [MIC's] Answer admitted, that the subcontract is a valid contract. [Plaintiff] agrees that because the validity of the subcontract is not in dispute, the quantum meruit claim may be dismissed at this point." (ECF No. 92 at 23.)

3

56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *See Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record, the court finds that a reasonable jury could return a verdict for the nonmoving party. *See Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011). In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc*., 915 F.2d 121, 123-24 (4th Cir. 1990). The nonmoving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, (1986); *Anderson*, 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

### IV. ANALYSIS

**A. Plaintiff's Motion for Partial Summary Judgment**

    1. The Parties' Arguments

Plaintiff claims that MIC "failed to plead a claim for breach of oral contract and its claims for damages thereupon should be dismissed." (ECF No. 83 at 8.) Plaintiff asserts that the court should grant summary judgment because "[MIC] failed to properly plead any claim based on the alleged oral agreement, and because the oral agreement is not enforceable due to lack of consideration, lack of specificity, and the South Carolina Statute of Frauds." (*Id.* at 3.)

Defendants claim that they have not "alleged or plead[ed] a claim for breach of oral contract[,]" but rather allege an oral modification that is not separate from the subcontract. (ECF

No. 95 at 16.) Defendants assert that (1) "the oral modification has consideration, including benefits to [Plaintiff] and forbearance by [MIC]; (2) "the oral modification is specific enough to be enforceable"; and (3) that "the statute of frauds does not apply to the oral modification." (*Id.* at 3, 19, 23.)

2. The Court's Review

In South Carolina, "[w]ritten contracts may be orally modified by the parties, even if the writing itself prohibits oral modification." *Carolina Amusement Co. v. Connecticut Nat. Life Ins. Co.*, 437 S.E.2d 122, 126 (S.C. Ct. App. 1993) (citing *S.C. Nat'l Bank v. Silks*, 367 S.E.2d 421, 422 (S.C. Ct. App. 1988)). An oral modification must include consideration. *APAC-Carolina, Inc. v. Towns of Allendale and Fairfax, S.C.*, 868 F. Supp. 815, 825 (D.S.C. 1993). Consideration is "some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the others." *McPeters v. Yeargin Const. Co., Inc.*, 350 S.E.2d 208, 211 (S.C. Ct. App. 1986).

Here, the parties disagree over material facts regarding the alleged oral modification. For example, Plaintiff casts doubt as to the validity of the "gentleman's agreement" between executives representing Plaintiff and MIC:

> [I]n 2015, Joe Bush, then-President of [MIC], testified that he had a 'brief meeting' between five and ten minutes long with Patrick McMullen, [Plaintiff's] President.
>
> This conversation took place in a banquet room in between presentations with no other witnesses.
>
> As Mr. Bush describes the conversation, Mr. McMullen was 'hesitant' and 'not sure how to respond' because it involved a 'fairly substantial amount of money.'
>
> When asked about the specifics of the conversation, Mr. Bush could only say 'I remember him agreeing to it.'
>
> When asked specifically what Mr. McMullen had said concerning the alleged agreement to split the cost of borrow, Mr. Bush testified Mr. McMullen only said

5

'Okay,' and that was the extent of the 'agreement.'

(ECF No. 83 at 6 (citing ECF No. 83-6 at 16-18.) In contrast, Defendants contend that the parties entered into an express oral modification that amounted to "more than a passing conversation." (ECF No. 95 at 21 (citing ECF Nos. 83-6 at 57 ¶¶ 4-15; 84-15 at 26-30.) Specifically, Defendants point to deposition testimony proffered by executives for MIC establishing "negotiations rather than a 'passing conversation.'" (*Id.* (citing ECF Nos. 95-1 at 2 ("I believe Joe and Teddy reached an agreement at the [] meeting a couple of weeks ago."); 95-7 at 1 ("We are in receipt of your [] letter in regards to the verbal agreement that took place between Joe Bush [MIC] and Teddy Phillips [Plaintiff] to purchase the import fill . . .")).) The question of whether there is a valid modification to the subcontract is unclear, leaving any further decision by the court with respect to the issues of consideration, specificity, and the statute of frauds, to be rife with speculation. As such, the court has no basis to grant summary judgment because there are genuine disputes of material facts. Therefore, Plaintiff's Motion for Partial Summary Judgment (ECF No. 83) is denied.

### B. Defendants' First Motion for Partial Summary Judgment

#### 1. The Parties' Arguments

Defendants filed a Motion for Partial Summary Judgment regarding Plaintiff's breach of contract claim. (ECF No. 84.) Defendants contend that Plaintiff's "*ex post facto* claims . . . are barred by [Plaintiff's] failure to meet a contractual condition precedent: providing written notice as required by the subcontract." (ECF No. 84-1 at 13.) Specifically, Defendants assert that: (1) Plaintiff "failed to provide notice of its inefficiency impact and proof of roll rework[3] claims, which

---

[3] Proof rolling refers to a subjective soil stability test used to evaluate whether placed soil satisfies SCDOT standards. (ECF Nos. 11 at 8 ¶ 49; 84-1 at 9; 92 at 5.)

is a contractual precondition to [Plaintiff's] right to recover on those claims"; (2) Plaintiff's "inefficiency impact claim is barred by the SCDOT standard specifications incorporated into the subcontract"; and (3) because "none of [Plaintiff's] payment applications notified [Defendants] of [S]ection 29-6-50 . . . [Plaintiff], as a matter of law, is not entitled to 'the benefits of the interest remedy found in the South Carolina Prompt Pay Act.'" (ECF No. 84 at 1-3.)

Plaintiff contends that "notice of [their] claims for inefficiency impact and proof roll rework is a disputed question of fact" because "it did not waive its proof of roll rework and inefficiency claims by signing a pay application." (ECF No. 92 at 4, 17 (citing ECF No. 84-5 at 32.) Plaintiff also claims that the "inefficiency impact claim is not barred by the SCDOT standard specification." (*Id.* at 21.)

   2. The Court's Review

In South Carolina, waiver is demonstrated in the following ways:

> [Waiver] may be expressed or implied by a party's conduct, and it may be applied to bar a party from relying on a [particular] defense . . . An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right is reasonably inferable . . . Generally, the party claiming waiver must show that the party against whom waiver is asserted possessed, at the time, actual or constructive knowledge of his rights or of all the material facts upon which they depended.

*SPUR at Williams Brice Owners Ass'n, Inc. v. Lalla*, 781 S.E.2d 115, 125 (S.C. Ct. App. 2015) (internal citations and quotations omitted). Notably, "[w]hether or not waiver has occurred in a given factual setting is a question of fact for the finder of fact." *Bishop v. Benson*, 374 S.E.2d 517, 519 (S.C. Ct. App. 1988).

The court finds that, viewing the facts in the light most favorable to Plaintiff, there are facts indicating MIC had notice of Plaintiff's potential claims. Here, Plaintiff asserts that it was "forced to conduct a large amount of proof roll repairs as a result of [MIC's] provision of poor-quality soils

7

to the job site with high moisture content." (*See* ECF No. 84-10 at 32-33). "Under the subcontract . . . [MIC] alone was responsible for 'securing and purchasing all required fill' for [Plaintiff] to utilize at the job site." (ECF No. 1-3 at 15). "Between March 2015 and January 2017, at least 90 proof rolls failed, indicating issues with the quality of the fill soils provided by [MIC]." (*See* ECF No. 84-10 at 32-33). "[MIC] instructed [Plaintiff] to rework the areas that failed proof rolls, which required redirection of [Plaintiff's] labor and equipment away from the original scope of the work." (ECF No. 92 at 6, 8 (citing ECF No. 83-3 at 49-50.) Importantly, Plaintiff contends that "[t]he daily reports . . . frequently disclosed that [Plaintiff] was having to do proof roll rework, despite having placed and compacted the soil appropriately." (ECF Nos. 92 at 8; 92-3 at 2-4.)

Consequently, the court finds that there is a genuine question of fact as to whether Plaintiff gave actual or constructive notice to MIC regarding the proof roll rework. *See SPUR*, 781 S.E.2d at 125. Absent context, the court cannot reach a decision without speculation. Therefore, Defendants' First Motion for Partial Summary Judgment (ECF No. 84) is denied.

### C. Defendants' Second Motion for Partial Summary Judgment

1. <u>The Parties' Arguments</u>

Defendants claim that "summary judgment should be granted in favor of [Defendants] on [the] breach of contract counterclaim for delay damages because it is undisputed that Plaintiff failed to provide Defendants with written notice of delay as required by the subcontract." (ECF No. 85 at 1.) Specifically, "[Plaintiff] was contractually obligated to complete its work . . . no later than June 20, 2015 . . . [and] there is no question of material fact that from at least June 2015, until October 17, 2016[,] [Plaintiff's] earthwork operations delayed the construction project at issue . . . ." (ECF No. 85 at 2.) Defendants also claim that there is no genuine issue of material fact as to the final quantity of work performed, which must be quantified, and that "the subcontract between

[the parties] clearly provides that [Defendants] ha[ve] the contract right to determine the final quantities of [Plaintiff's] work items." (*Id.*)

Plaintiff claims that "the parties dispute whether there was a 'production schedule mutually agreed upon by both parties' that controlled Plaintiff's work." (ECF Nos. 1-3; 18 ¶ 7; 27 ¶ 7; 11 ¶¶ 17-19). Furthermore, (1) "[t]he parties dispute whether Plaintiff was required to give MIC written notice of specific delays (*See* ECF No. 1-3; ECF No. 85 at 16-21); (2) "[t]he parties dispute whether [MIC] waived any written notice requirements in the subcontract (*See e.g.*, ECF No. 83-3 at 49-50); and (3) "[t]he parties dispute whether responsibility for delays and resulting damages can be assessed as a matter of law." (ECF No. 94 at 2-3.)

2. The Court's Review

"Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *McGill v. Moore*, 672 S.E.2d 571, 574 (2009). "Construction of such an agreement is a matter of contract law. [] When the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect." *Ellis v. Taylor*, 449 S.E.2d 487, 488 (S.C. 1994) (citing *Jordan v. Sec. Group, Inc.*, 428 S.E.2d (S.C. 1993)). "The court's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." *Id.* Further, when "a contract is unambiguous a court must construe its provisions according to the terms the parties used; understood in their plain, ordinary, and popular sense." *Schulmeyer v. State Farm Fire & Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003).

Here, the record shows that there is a dispute of material fact regarding the allegedly agreed upon schedule:

> At the time of the subcontract's execution, [Plaintiff] had not been provided with a production schedule or a contractual time limit to compete the work.

9

> Shortly after the subcontract, [MIC] issued a schedule to [Plaintiff], which showed a completion of [Plaintiff's] work by June 7, 2015. [Plaintiff] reasonab[ly] assumed that if it followed the design documents provided by [MIC], and the sequence in the [MIC] schedule, that it would be able to complete its work . . . .

(ECF No. 94 at 7 (citing ECF No. 11 at 3 ¶¶ 17-18).)

Furthermore, "Ronald Sines, [MIC's] Executive Vice President and Project Manager for the Project who sent the email attaching the alleged 'schedule,'" testified in his deposition as follows:

> Q: Yes, Article Six says that: 'The subcontractor shall complete the several portions of the work comprehended in the agreement by and at the time and times hereinafter stated, to wit, in accordance with the contractor's approved progress schedule, which is contingent upon a forthcoming production schedule mutually agreed upon by both parties.' Do you see that?
>
> A: Yes.
>
> Q: Was that something that you were aware of at the time the job started?
>
> A: I don't remember.
>
> Q: Did you ever see a mutually agreed production schedule for the project?
>
> A: I don't remember.

(ECF No. 94 at 11.)

Viewing the evidence in the light most favorable to Plaintiff, the court finds that there are genuine disputes of material facts regarding the existence of a production schedule mutually agreed upon by both parties and how such schedule shall affect the calculation of damages. Therefore, Defendants' Second Motion for Partial Summary Judgment (ECF No. 85) is denied.

## V. CONCLUSION

For the reasons stated above, the court **DENIES** Plaintiff Phillips and Jordan, Inc.'s Motion for Partial Summary Judgment (ECF No. 83) and **DENIES** Defendants Western Surety Company

and McCarthy Improvement Company's Motions for Partial Summary Judgment (ECF Nos. 84, 85).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

December 1, 2019
Columbia, South Carolina